IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 7:19-CR-94 |
| | : | |
| Vs. | : | |
| | : | |
| IOANA-CRISTINA PAVEL | : | Judge Ballou |

MOTION FOR RELEASE ON BOND

Ms. Pavel is a mother of two from Romanian who has no prior record, but drinks heavily, and was lured with false promises to the United States by one of her codefendants. Ms. Pavel was arrested on May 5, 2019 by state authorities. She did not resist. On September 25, 2019 federal authorities arrested her. She was ordered detained on October 1, 2019. On October 17, 2019, the grand jury returned an eleven-count Indictment, charging Ms. Pavel with violating Title 18, United States Code, Sections 1344 (Bank Fraud), 1028A (Aggravated Identity Theft), 1029(a) (Access Device Fraud), and 2 (Principals Liability). The government filed a superseding indictment adding codefendants and additional counts in January of 2020. The Court scheduled a jury trial for May 26th through May 29, 2020. Given her history of heavy drinking and with the onset of the coronavirus (COVID-19), the defense seeks her release into The Way Forward Program at the Rescue Mission in Roanoke, Virginia where she can receive counseling regarding alcoholism and where she can self-quarantine. The United States objects to Ms. Pavel's release on bond.

Since the initial arraignment, the coronavirus outbreak has occurred, posing a significant health risk to the population at-large and leading to the entire country resorting to social distancing as a means to slow the spread. Much of the country is required to self-quarantine. On

March 13, 2020, President Trump declared a national emergency.[1] That same day, the Bureau of Prisons implemented Phase Two of its COVID-19 Action Plan.

> Effective immediately, the following national measures are being deployed by the BOP in order to mitigate the spread of COVID-19, acknowledging the United States will have more confirmed cases in the coming weeks and also noting that the population density of prisons creates a risk of infection and transmission for inmates and staff.[2]

Phase Two suspends legal and social visits to the prison for thirty days. *Id*. This risk is especially concerning for those in close quarters in prisons.

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The pandemic and the associated health risks are a compelling reason. As of today, March 26, 2020, there are 460[3] cases of the coronavirus and thirteen deaths reported in Virginia alone. Nationwide, the numbers increase hourly. As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the local jail, and held with the existing population, potentially bringing with them COVID-19. The United States does not have enough COVID-19 tests to determine who is carrying the virus.[4] Inmates are held in large numbers and close quarters, increasing the spread of the virus should it be introduced into

---

[1] Proclamation No. 9994: "Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak", 85 Fed. Reg. 15337-15338 (published Mar. 18, 2020)
[2] Federal Bureau of Prisons COVID-19 Action Plan Agency-Wide Modified Operations, (March 13, 2020), *at* https://www.bop.gov/resources/news/20200313_covid-19.jsp.
[3] Virginia Department of Health, http://www.vdh.virginia.gov/coronavirus/ (March 26, 2020).
[4] PBS, https://www.pbs.org/newshour/health/the-reason-u-s-covid-19-numbers-arent-higher-not-enough-tests, (March 12, 2020).

the jail.[5] Roanoke City Sheriff's Major David Bell told The Roanoke Times that "Environments like the jail are more susceptible to the spread of COVID-19, because of the close proximity of the inmates and staff in a confined area."[6] The circumstances that existed when this Court ordered the detention of Ms. Pavel have now changed.

Forcing nonviolent people like Ms. Pavel to stay in prison under the extraordinary conditions caused by a global pandemic runs afoul of the Eighth Amendment's prohibition against cruelty. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[7] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[8] In China, officials confirmed the coronavirus spread at a rapid pace in Chinese prisons, counting 500 cases.[9] It is likely that the coronavirus outbreak will occur in the institutional setting at some point.

Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human

---

[5] The Roanoke Times, https://www.roanoke.com/news/crime/some-area-inmates-get-early-release-as-jails-respond-to/article_51f31890-ade7-59da-830f-7b60bfe7ac1d.html, (March 20, 2020)

[6] Id.

[7] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* http://bit.ly/2W9V6oS.

[8] Prisons and Jails are Vulnerable to COVID-19 Outbreaks, The Verge (Mar. 7, 2020) *at* http://bit.ly/2TNcNZY.

[9] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

decency."[10] Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners.[11]

Continued detention is unnecessary to ensure the primary goals of pretrial detention—appearance in court and community safety. During her temporary release, Ms. Pavel will be subject to and monitored by this court's pretrial services officer. Given the "shutdown" this country is experiencing and the government directives to shelter at home, Ms. Pavel will not need to travel from the mission.

## CONCLUSION

The Rescue Mission would be an appropriate place to live pretrial, and there is a set of conditions this Court can craft to ensure that she will return to Court when ordered to do so. Given the risk of illness to Ms. Pavel if not granted bond, this Court should release her on conditions it deems appropriate.

Respectfully Submitted,

*/s/Monica D. Cliatt*
Monica D. Cliatt
First Asst. Federal Public Defender
Pa. No. 84848
Federal Public Defender's Office
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
Tel: (540) 777-0880
Fax: (540) 0890
monica_cliatt@fd.org

*Counsel for Ioana Cristine Pavel*

**CERTIFICATE OF SERVICE**

---

[10] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.
[11] Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.

5

I certify that a true copy of the foregoing document was electronically filed and will be forwarded to the Assistant United States Attorney on this the 26th day of March, 2020 using the CM/ECF system.

<u>s/Monica D. Cliatt</u>