IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | ) | | |
| | ) | **Criminal No. 7:19-cr-94** | |
| v. | ) | | |
| | ) | | |
| **IOANA-CRISTINA PAVEL,** | ) | By: | Michael F. Urbanski |
| **et al.,** | ) | | |
| Defendant. | ) | **Chief United States District Judge** | |

### MEMORANDUM OPINION

This matter comes before the court on defendant's Motion to Dismiss with prejudice, ECF No. 78, which asks the court to dismiss the Superseding Indictment, ECF No. 32, against defendant Ioana-Cristina Pavel with prejudice under Federal Rule of Criminal Procedure 48(b). The government opposes the motion, ECF No. 84, and moves the court to dismiss the Superseding Indictment without prejudice under Federal Rule of Criminal Procedure 48(a), ECF No. 89. For the reasons discussed below, the court will **DENY** the defendant's motion, **GRANT** the government's motion, and **DISMISS** the Indictment **without prejudice**.

### I.

On May 5, 2019, Pavel was arrested by state police officers for her role in a Romanian organization's ATM skimming activity in the Western District of Virginia. ECF No. 84 at 1-2. On September 25, 2019, defendant was taken into federal custody. ECF Nos. 78, 84. On October 17, 2019, defendant was charged in an eleven-count indictment, alleging bank fraud in violation of 18 U.S.C. § 1344; aggravated identity theft in violation of 18 U.S.C. § 1028A; and access device fraud in violation of 1029(a). ECF No. 16. On January 2, 2020, a superseding indictment was filed adding codefendants and a conspiracy charge. ECF No. 32. Trial was

scheduled for May 26-29, 2020, ECF No. 40, but, due to the COVID-19 pandemic and pursuant to the Second Amended Standing Order 2020-5, was continued to February 8-11, 2021, ECF No. 59, then again to May 10-12, 2021, ECF No. 86.

On March 26, 2020, Pavel filed a motion for release on bond stating that the nonviolent nature of her offenses and the high risk of contracting coronavirus in federal custody warranted her release. ECF No. 53. If released, Pavel stated that she would reside at the Roanoke Rescue Mission pending trial. Id. The government objected Pavel's motion, citing the defendant's current Immigration and Customs Enforcement ("ICE") detainer. ECF No. 54. The government noted that because of COVID-19, it was unsure if or how this detainer would be enforced. Id. On March 31, 2020, the magistrate judge granted defendant's motion for pretrial release. ECF No. 55. The government then learned that if released from federal custody, ICE would detain Pavel, and the court was alerted of this information. ECF No. 84 at 3-4. Because of this development, the magistrate judge asked counsel for defendant whether "she wanted him to enter his bond order or have Pavel stay in the marshal's custody at the Roanoke City Jail." Id. at 4. Pavel's counsel requested that the pretrial release order be entered. Id.

Following this, ICE detained Pavel and transported her to the Caroline Detention Facility in Bowling Green, Virginia, then to the Irwin County Detention Center in Ocilla, Georgia, and, finally, to Romania on May 26, 2020. Id.; ECF No. 78 at 2. Defendant's counsel was alerted of Pavel's removal in June 2020. ECF No. 84 at 4.

On November 30, 2020, defendant filed a Motion to Dismiss the Indictment with prejudice alleging that defendant's removal violated her (1) rights under the federal Bail

Reform Act, 18 U.S.C. § 3142, and this court's pretrial release order; (2) Fifth Amendment due process right; and (3) Sixth Amendment right to assistance of counsel. ECF No. 78. The government opposed the motion. ECF No. 84. Following the government's response in opposition to defendant's motion to dismiss, the government learned that there is no active arrest warrant for Pavel; thus, she currently cannot be extradited to the United States. ECF No. 89. Because of this oversight, the government moves to dismiss the Superseding Indictment without prejudice. Id.

The parties and court agree that the Superseding Indictment will be dismissed. The only question before the court is whether the Superseding Indictment will be dismissed with or without prejudice.

## II.

The dismissal of indictments is governed by Federal Rule of Criminal Procedure 48, which provides:

> (a) By the Government. The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.
>
> (b) By the Court. The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
>> (1) presenting a charge to a grand jury;
>> (2) filing an information against a defendant; or
>> (3) bringing a defendant to trial.

Fed. R. Crim. P. 48.

The government moves to dismiss the Superseding Indictment without prejudice under Rule 48(a). The court's discretion to deny the government's motion "is not broad."

United States v. Goodson, 204 F.3d 508, 512 (4th Cir. 2000); see also United States v. Smith, 55 F.3d 157, 159 (4th Cir. 1995). "[T]he court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." Goodson, 204 F.3d at 512 (citing Rinaldi v. United States, 434 U.S. 22, 30 (1977)); United States v. Mujahid, 491 F. App'x 859, 860 (9th Cir. 2012) ("[a] district court is 'duty bound' to grant the government's rule 48(a) motion to dismiss an indictment without prejudice unless 'it specifically determines that the government is operating in bad faith' in pursuing the motion.").

Although defendant alleges that the government did not communicate between its executive agencies, she does not allege that the government's motion has been brought in bad faith. Nor does the record support any such finding. Thus, under Goodson, because the government filed a Rule 48(a) motion and there is no suggestion of bad faith, the court "must grant" the motion and dismiss the Superseding Indictment without prejudice. Goodson, 204 F.3d at 512; see also Fowlkes v. United States, No. Civ. No. CCB-14-1700, 2016 WL 6680041, at *3 n.4 (D. Md. Nov. 14, 2016) (holding that once the court finds the government did not act in bad faith, "this court need not address the separate issue of prejudice").

However, defendants argue that the Superseding Indictment should be dismissed with prejudice under Rule 48(b). Under Rule 48(b), the court may dismiss an indictment with prejudice "on constitutional grounds" or "under the court's inherent power to dismiss an indictment where the delay is not of a constitutional magnitude." Goodson, 204 F.3d at 513. Here, defendant alleges that the government abandoned prosecution and her deportation and continued prosecution violate her (1) rights under the Bail Reform Act and this court's pretrial

4

release order; (2) Fifth Amendment due process rights; and (3) Sixth Amendment right to counsel. ECF No. 78.

Dismissing an indictment with prejudice "is a harsh remedy," as "the court allows its interest in the orderly administration of justice to override the interests of the victims and the public interest in the enforcement of the criminal law." Goodson, 204 F.3d at 514. "The court may only dismiss an indictment with prejudice if a defendant can demonstrate he has suffered prejudice." United States v. East Mental Health, LLC, No. 7:18-cr-27, 2018 WL 5928059, at *3 (W.D. Va. Nov. 13, 2018); see also Goodson, 204 F.3d at 514; United States v. Voll, Nos. CRIM.A. 2:05-00231-32, 2006 WL 1831503, at *4 (S.D.W. Va. July 3, 2006) ("As Goodson indicates, dismissal with prejudice is warranted only when prejudice is shown."). Even if the government has deliberately violated a defendant's constitutional or statutory rights, it is "plainly inappropriate" for a district court to dismiss the indictment with prejudice unless there was "demonstrable prejudice." United States v. Hernandez-Olea, 407 F. Supp. 3d 1351, 1354 (2019) (quoting United States v. Morrison, 449 U.S. 361, 366-67 (1981)) ("absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment [with prejudice] is plainly inappropriate, even though the violation may have been deliberate."). Demonstrable prejudice is present where "some adverse effect upon the effectiveness of counsel's representation or [ ] some other prejudice to the defense[]" occurs. Morrison, 449 U.S. at 365. However, "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitation grounds." United States v. Taylor, 487 U.S. 326, 342 (1988).

A. <u>Pavel's rights under the Bail Reform Act and the court's release order were not violated.</u>

First, defendant alleges that when ICE detained and deported her to Romania following the court's pretrial release of defendant, her rights under the Bail Reform Act and the court's order setting the conditions of release were violated. ECF No. 78. Additionally, Pavel alleges that because the United States Attorney's Office did not prevent her deportation, they, effectively, abandoned her prosecution. <u>Id.</u> Essentially, defendant argues that the government must choose between prosecution or removal.

"Ordinarily, a defendant should not be detained pending trial." <u>United States v. Lee</u>, No. 19-159, 2020 WL 1974881, at *3 (D. Md. Apr. 24, 2020); <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739, 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). The Bail Reform Act governs the release or detention of a defendant pending trial. If the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." Bail Reform Act, § 3142€(1). "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." <u>United States v. Trujillo-Alvarez</u>, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012) (quoting <u>United States v. Adomako</u>, 150 F. Supp. 2d 1302, 1304 (M.D. Fla. 2001)).

Under the Immigration and Naturalization Act ("INA"), ICE has the authority to detain an alien and remove them within a 90-day period, "which starts on the latest of (1) '[t]he date the order of removal becomes administratively final, (2) the date of an appellate court's final order if the removal is stayed, or, the provision pertinent to this case, (3) [i]f the alien is

6

detained or confined (except under an immigration process), the date the alien is released from detention or confinement.'" Hernandez-Olea, 407 F. Supp. 3d at 1355; see also 8 U.S.C. § 1231(a)(1)(B).

Courts agree that there needs to be more harmony between executive agencies. See United States v. Rojas, No. 18-10048-01-JWB, 2018 WL 6696570, at *2 (D. Kan. Dec. 19. 2018) ("Several courts have expressed frustration with the failure of DOJ and DHS to better coordinate their actions concerning criminally-charged aliens who are subject to immigration detainers."); United States v. Ailon-Ailon, 875 F.3d 1334, 1339 (10th Cir. 2017) ("The problem here is . . . that two Article II agencies will not coordinate their respective efforts. . . .") (quoting United States v. Barrera-Omana, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009)); United States v. Alvardo-Velasquez, 322 F. Supp. 3d 857, 860 (M.D. Tenn. 2018) ("[W]hile Congress may not have contemplated the intersection of the [Bail Reform Act] and the INA in a case such as this one, [it is] safe to say Congress would expect two agencies from the same branch of government to work cooperatively and to refrain from acting irrationally.") (quoting United States v. Marinez-Patino, No. 11-cr-064, 2011 WL 902466, at *7 (N.D. Ill. Mar. 14, 2011)). As noted, "[t]he interplay between the [Bail Reform Act] and the INA has caused both confusion and tension." Trujillo-Alvarez, 900 F. Supp. 2d at 1176.

Nonetheless, the court finds persuasive the growing support amongst the circuits that the Bail Reform Act and the INA work in tandem rather than conflict. See United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018) ("ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a [Bail Reform Act] release determination."); United States v. Lett, 944 F.3d 467, 470 (2d Cir. 2019) ("the [Bail

7

Reform Act] does not preclude the government from exercising its independent detention authority under the INA"); United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir.), cert. denied, 140 S. Ct. 526 (2019) (finding that pre-removal detention is not precluded by pretrial release and the [Bail Reform Act] and the INA do not conflict with each other); United States v. Vasquez-Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019) ("Detention of a criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities."); United States v. Pacheco-Poo, 952 F.3d 950, 952 (8th Cir. 2020) (holding that a [Bail Reform Act] release order precludes INA removal is "wrong"). In any event, "[i]t is not appropriate for an Article III judge to resolve Executive Branch turf battles." Rojas, 2018 WL 6696570, at *2. Thus, because the Bail Reform Act and INA do not conflict, defendant's rights under the Bail Reform Act and the court's release order were not violated when Pavel was detained and removed by ICE following the court's order of pretrial release.

> B. Pavel's Fifth Amendment due process right and Sixth Amendment right to counsel were not violated.

Defendant also alleges that because she was detained and deported, she cannot prepare her defense or consult with her counsel. ECF No. 78. Nevertheless, the court finds this argument unconvincing. Pavel's argument fails because she is unable to show how dismissal without prejudice is not an adequate remedy. The court does not dispute that if the government were intending to continue prosecuting these charges under this Superseding Indictment, defendant's removal might violate her constitutional rights. But, here, that is not the case because the government has moved to dismiss the Superseding Indictment.

The Fifth Amendment right to due process "guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" United States v. Valenzula-Bernal, 458 U.S. 858, 872 (1982) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)). The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI; see also Morrison, 449 U.S. at 364.

Pavel cites to several cases to support the notion that deportation while maintaining criminal prosecution violates a defendant's Fifth and Sixth Amendment rights. These cases are inapposite. In Trujillo-Alvarez, the court considered whether a detained alien, and Mexican citizen, should be released from federal custody pursuant to a magistrate judge's pretrial order to continue being prosecuted or be deported to Mexico. Trujillo-Alvarez, 900 F. Supp. 2d at 1170. There, the court gave the executive branch the opportunity to choose whether they wanted to continue to pursue criminal prosecution or removal. Id. at 1180. The court stated that if Trujillo-Alvarez was released, then the criminal prosecution could move forward, but if he was deported, then his Fifth Amendment due process right and Sixth Amendment right to counsel would be violated. Id. at 1170. The Trujillo-Alvarez case is inapplicable here because, unlike Trujillo-Alvarez, the government has moved to dismiss the Superseding Indictment. Thus, there will be no continued criminal prosecution. In Resendiz-Guevara, the court considered whether a defendant's removal from the country substantially interfered with the defendant's due process right and right to counsel. United States v. Resendiz-Guevara, 145 F.

9

Supp. 3d 1128, 1131-32 (M.D. Fla. 2015). There, the court determined that the defendant's removal from the country did violate his Fifth Amendment and Sixth Amendment rights. Id. at 1139. But Resendiz-Guevara does not support Pavel's request because (1) the government did not move to dismiss the indictment in that case; and (2) in contrast to Pavel's request for a dismissal with prejudice, that case was dismissed without prejudice. Defendant does not point to any case that suggests, absent prosecutorial bad faith, dismissal with prejudice is appropriate when the government moves to dismiss without prejudice.

Defendant's concerns about the inability to participate in her defense and consult with her counsel are valid constitutional concerns. However, they are ameliorated by dismissal without prejudice. If the government wants to prosecute the defendant again, the government must secure a new indictment, and the new charges may be barred by the statute of limitations. See Taylor, 487 U.S. at 342. The court sees no prejudice that cannot be adequately remedied by dismissal without prejudice. Thus, because the government has, in good faith, moved for dismissal without prejudice, the defendant has suffered no Fifth and Sixth Amendment violations.

### III.

It is for the foregoing reasons that the court **DENIES** defendant's motion to dismiss with prejudice, **GRANTS** the government's motion, and **DISMISSES** the Superseding Indictment **without prejudice**. An appropriate order will issue.

Entered: March 1, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.03.01 15:29:49
-05'00'

Hon. Michael F. Urbanski
Chief United States District Judge